UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2021 AUG 10 PM 3: 50

CLERK
BY_____
DEPUTY CLERK

TAMARA SUE HARBEC and MARCEL
LEO HARBEC,

    Plaintiffs,

    v.

NORTH COUNTRY HOSPITAL &
HEALTH PRACTICES,

    Defendant.

)
)
)
)
)
)
)
)
)
)
)
)

Case No. 5:19-cv-61

**OPINION AND ORDER**
**(Docs. 76, 78)**

Plaintiffs Tamara Sue Harbec and her husband Marcel Leo Harbec, pro se, have brought

a suit alleging lack of informed consent in connection with Ms. Harbec's treatment at an

emergency room and at a series of doctors' appointments. (*See* Am. Compl., Doc. 53.) Of the

originally named defendants, only North Country Hospital & Health Practices (the "Hospital")

remains in the case. The Hospital has filed a motion for summary judgment under Fed. R. Civ.

P. 56. (Doc. 76.) Plaintiffs have filed a motion to further amend the Amended Complaint.

(Doc. 78.)

**Factual Background**

Plaintiffs have not filed any opposition or other response to the summary judgment

motion. Therefore, except where otherwise noted, the court takes the following facts—drawn

from Defendant's statement of undisputed material facts (Doc. 76-2) and from the Amended

Complaint (Doc. 53) referred to in that statement—as true for the purposes of the motion.

*See* Fed. R. Civ. P. 56(e) ("If a party fails to . . . properly address another party's assertion of fact

as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the

motion."). In describing the facts below, the court reaches no conclusion that these facts are accurate or supported by evidence. Rather, the court seeks to summarize plaintiffs' version of the facts as these appear in the amended complaint (Doc. 53).

Plaintiffs' Version of the Facts

Ms. Harbec suffered a cerebrovascular accident in Newport, Vermont on July 13, 2016 and was transported to the Hospital's emergency department. (Doc. 53 at 6, ¶ 1.) Emergency room physicians Dr. Elizabeth Moore and Dr. William Brunelli treated her. Dr. Brunelli had treated Ms. Harbec less than a year before, at which time he ordered a brain MRI that indicated "anterior aphasia."[1] (*Id.*) Dr. Brunelli never discussed that diagnosis with Ms. Harbec. (Doc. 53 at 6, ¶ 1).

At the emergency department on July 13, 2016, nurses mentioned to Dr. Brunelli that Ms. Harbec might have suffered a "TIA"—a transient ischemic attack.[2] (*Id.*) The emergency department doctors reviewed a recent MRI and ordered tests. They also prescribed intravenous blood products. They did not discuss the foreseeable risks and benefits of those tests and treatments. They advised Ms. Harbec that the MRI and the blood work were all "fine." (*Id.*) Dr. Moore diagnosed a "tension headache," prescribed Zofran (an anti-nausea drug), and discharged Ms. Harbec from the emergency department. (*Id.*) The doctors did not "disclose[]

---

[1] *See Stedman's Medical Dictionary* 54070 (28th ed. 2006) (Westlaw) (aphasia is "[i]mpaired or absent comprehension or production of, or communication by, speech, reading, writing, or signs, caused by an acquired lesion of the dominant cerebral hemisphere").

[2] *See Stedman's Medical Dictionary* 85280 (28th ed. 2006) (Westlaw) (a TIA is "a sudden focal loss of neurologic function with complete recovery usually within 24 hours; caused by a brief period of inadequate perfusion in a portion of the territory of the carotid or vertebral basilar arteries").

the cause" of Ms. Harbec's condition and did not transfer her to a level-one trauma center for treatment of a stroke.  (*Id.*)

On April 12, 2017, the Newport Ambulance Service transported Ms. Harbec to the Hospital to evaluate numbness in her limbs.  (*Id.* at 7, ¶ 5.)  She was informed that her symptoms only amounted to anxiety and discharged. Dr. Charles Lagoy wrote in Ms. Harbec's ER chart that her diagnoses were "imaginary."  (*Id.*)  She was not transferred to a hospital in New Hampshire where she was receiving neurologic care.  (*Id.*)[3]

In June 2017, Dr. Christopher Rickman did not properly diagnose or refer Ms. Harbec for pleurisy, chest pain, cardiac dysrhythmia, glomerulonephritis, seizure disorder, or "brain damage of white matter disease."  (*Id.* at 6–7, ¶ 3.)  Dr. Rickman only treated Ms. Harbec for bipolar disorder, prescribing her Seroquel and Lorazepam.  (*Id.*)  He did not discuss the "risks and benefits" with Ms. Harbec at any time.  (*Id.*)  Rory Carr, NP likewise failed to treat or refer Ms. Harbec for any condition other than bipolar disorder or discuss any risks or benefits with her.  (*Id.* at 7, ¶ 4.)[4]

---

[3] The Amended Complaint contains allegations regarding the conduct of neurologists at the Dartmouth Hitchcock Medical Center ("DHMC"). (*See* Doc. 53 at 8, ¶ 7.) That facility is not a defendant in this case.  The court focuses on the facts that are material to Plaintiffs' claims against North Country Hospital & Health Practices.

[4] In addition to the allegations summarized above, the Amended Complaint contains allegations regarding the conduct of Ms. Harbec's longtime family physician, Dr. Robert Primeau. (*See* Doc. 53 at 6–8, ¶¶ 2, 6.) The court understands from Ms. Harbec's previous filings in this case that she claims that Dr. Primeau improperly referred her for psychiatric treatment in February 2017, and that by doing so Dr. Primeau signaled to other providers— including Dr. Lagoy and Dr. Rickman—that they should focus on mental health conditions instead of physical conditions. (*See* Doc. 61 at 7–8.) But the pleadings in this case have consistently included allegations against Dr. Primeau solely in connection with his employment at Northern Counties Health Care—a federally qualified health center—and the court has previously dismissed the claims against the Government. (*See* Doc. 61.)

Ms. Harbec states that she has numerous medical conditions. (*See id.* at 8, ¶ 7 ("The medical conditions I have now I had when I left North Country Hospital.").) She alleges:

> The pain I have now is debilitating. I have right sided head pain radiating down the right side of my face. My eyesight is affected and I have daily pulling pain from behind each eye[.] I have neurogenic pain in all limbs and digits that is not relieved by daily medication. I have nerve damage throughout my entire body. . . . I have a cognitive impairment that prevents me from living life normally and enjoy[ing] myself as I did before this happened.

(*Id.* at 8.) She further alleges that she lacks full use of her left arm and hand and has difficulties with balance, high blood pressure, inability to maintain a regular body temperature, bilateral sensorineural hearing loss, and numbness at the right side of her mouth. (*Id.* at 9.)

## Procedural History

On May 7, 2019, Ms. Harbec filed a medical malpractice suit against the United States and North Country Hospital. (Doc. 4.) She did not file the certificate of merit required for her claim with the complaint under 12 V.S.A. § 1042. (*Id.*) She failed to file a conforming certificate of merit after receiving multiple opportunities. (Docs. 6, 9; *see* Doc. 52.) The court dismissed her complaint with leave to amend to allege facts to support her informed-consent claims under 12 V.S.A. § 1909. (Doc. 52.)

Plaintiffs filed an Amended Complaint on June 11, 2020, listing § 1909 as the basis for the action and asserting factual allegations including those recited above. (Doc. 53.) The United States moved to dismiss the Amended Complaint. (Doc. 54.) The court granted that motion in an order dated August 6, 2020. (Doc. 61.) The court issued a stipulated discovery schedule order on January 15, 2021 which included an expert disclosure deadline of April 1, 2021. (Doc. 66 at 2.) The Hospital filed the present motion for summary judgment on May 11, 2021. (Doc. 76.) Plaintiffs filed their motion to amend on May 18, 2021. (Doc. 78.)

## ANALYSIS

### I.      Supplemental Jurisdiction

The Hospital's motion does not raise any jurisdictional issue, but the court notes that all

of Plaintiffs' federal claims have now been dismissed.  Although the court has discretion to

decline to exercise supplemental jurisdiction over the remaining state-law claims, 28 U.S.C.

§ 1367(c)(3), the court elects to retain jurisdiction over those claims in the interests of judicial

economy, convenience, and fairness, especially in light of the court's experience with this case

over the course of the past two years.  *See Ametex Fabrics, Inc. v. Just In Materials, Inc.*,

140 F.3d 101, 105 (2d Cir. 1998) (where the district court has dismissed all claims over which it

has original jurisdiction, it has discretion to determine whether to exercise supplemental

jurisdiction).  The court proceeds to consider the Hospital's Rule 56 motion directed at Plaintiffs'

state-law claims.

### II.     The Hospital's Motion for Summary Judgment (Doc. 76)

#### A.      Rule 56 Standard

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure

"if the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*,

477 U.S. 317, 322 (1986).  In making a determination on summary judgment, the court

"construe[s] the evidence in the light most favorable to the nonmoving party and draw[s] all

reasonable inferences in that party's favor." *Tracy v. Freshwater*, 623 F.3d 90, 95 (2d Cir.

2010).  Initially, the burden is on the moving party to demonstrate "the absence of a genuine

issue of material fact." *Celotex*, 477 U.S. at 323.  Once a properly supported motion has been

made, the burden shifts to the nonmoving party to set out specific facts showing a genuine issue

for trial. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) (citing Fed. R. Civ. P. 56(e)).

      The court has previously cautioned Ms. Harbec that failure to respond to a defendant's

motion for summary judgment may result in dismissal of the claims against that defendant.

(*See* Doc. 11 at 3.) The Hospital has also filed and served the notice required by Local Rule

56(e). (*See* Doc. 77.) Although Plaintiffs have had ample notice of the consequences of failing

to file an opposition to a summary judgment motion, the court must still consider whether the

Hospital is entitled to judgment as a matter of law. *See Vt. Teddy Bear Co. v. 1-800 Beargram*

*Co.*, 373 F.3d 241, 242 (2d Cir. 2004) ("[E]ven when a motion for summary judgment is

unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to

judgment as a matter of law.").

### B.    Informed Consent

      The Hospital argues that Ms. Harbec needs expert witness testimony to meet her burden

of proof on the informed-consent claim. (Doc. 76 at 4.) The Hospital asserts that, without expert

testimony, a lay jury will not understand Ms. Harbec's claims because her physicians' use of

"blood products" and Lorazepam were pursuant to a course of treatment outside the knowledge

of the average person. (*Id.* at 5.) The Hospital adds that only an expert can demonstrate that lack

of informed consent caused the injuries of which Ms. Harbec complains. (*Id.*) The Hospital

maintains that, for example, cognitive impairment, bilateral sensorineural hearing loss, failure to

maintain regular body temperature, and other ailments are too complex for a jury to understand

without expert testimony. (*Id.*)

      The Hospital further argues that since Plaintiffs' expert disclosure deadline has passed,

Ms. Harbec will not have the expert testimony necessary to prove her claim. (*Id.* at 6.) The

Hospital notes that Ms. Harbec has apparently suggested that Hospital neurologist Dr. Rizwan

Haq, MD, or DHMC employee Dr. Benjamin Saunders, MD, would be her experts.  (*Id.*)  But the

Hospital maintains that Ms. Harbec's email dated March 2, 2021 (Doc. 76-5) containing this

information did not meet Rule 26 disclosure requirements for several reasons.  (Doc. 76 at 6.)

First, the email itself makes clear that Ms. Harbec has not spoken to either doctor about being an

expert in this case or whether their testimony would support her claim.  (*Id.*)  Second, the email

does not comply with the disclosure requirements of Rule 26(a)(2)(C): it has no information

concerning the subject matters on which the doctors are expected to testify or any summary of

the facts and opinions to which they are expected to testify.  (*Id.* at 6–7.)  Third, Plaintiff has not

contacted Dr. Haq about serving as an expert in this case, and if contacted, Dr. Haq would

decline to perform this role.  (*Id.* at 7; *see also* Declaration of Dr. Haq, Doc. 76-6.)

Vermont law defines the term "lack of informed consent" in pertinent part as "the failure

of the person providing the professional treatment or diagnosis to disclose to the patient such

alternatives thereto and the reasonably foreseeable risks and benefits involved as a reasonable

medical practitioner under similar circumstances would have disclosed, in a manner permitting

the patient to make a knowledgeable evaluation . . . ."  12 V.S.A. § 1909(a)(1).  Section 1909

further provides:

> A motion for the defendant at the end of plaintiff's case must be granted as to any
> cause of action for medical malpractice based solely on lack of informed consent if
> the plaintiff has failed to adduce expert medical testimony in support of the
> allegation that he or she was not provided sufficient information as required by
> subdivision (a)(1) of this section.

*Id.* § 1909(e); *see also Mello v. Cohen*, 168 Vt. 639, 641, 724 A.2d 471, 473 (1998) (mem.)

("The statute mandates judgment for defendant at the end of plaintiff's case if plaintiff has failed

to adduce expert medical testimony in support of allegations concerning insufficient information.").

Vermont courts enforce this statutory requirement in informed-consent cases. *See Mello*, 168 Vt. at 639–41, 724 A.2d at 474 (claim arising from tongue surgery needed expert witness testimony); *see also Pontbriand v. Bascomb*, No. 2009-042, 2009 WL 2477608 (Vt. July 20, 2009) (mem.) (finding expert witness testimony necessary to support informed-consent claim regarding treatment following heart attack, including heart surgery); *Noyes v. Gagnon*, No. 2007-311, 2008 WL 2811231 (Vt. Feb. 1, 2008) (mem.) (affirming judgement for defendant on summary judgment because of lack of expert witness testimony regarding finger surgery). There is an exception for injuries so obvious that a layperson would understand the breach of care. *Largess v. Tatem*, 130 Vt. 271, 279, 291 A.2d 398, 403 (1972); *Noyes*, 2008 WL 2811231, at *1. For example, the *Largess* Court found the exception applicable where a doctor failed to instruct a patient not to put weight on her hip replacement, even though the medical product used in the surgery had a warning label saying the product could not bear weight. *Largess*, 130 Vt. at 279, 291 A.2d at 403.

### 1.    Ms. Harbec's Informed-Consent Claim Requires Expert Testimony

In this case, each of the various medical issues that Ms. Harbec raises are all at least as complicated as these cases. Like the tongue lesion in *Mello*, Ms. Harbec's various alleged conditions do not "fall within the common knowledge of lay fact finders." 168 Vt. at 640, 724 A.2d at 474. Similarly, the finger laceration and later amputation at issue in *Noyes* were found to be too complicated for a lay jury to understand without expert testimony because they involved surgery on a tendon. *Noyes*, 2008 WL 2811231, at *1. Like the plaintiff's heart attack

and subsequent heart surgery in *Pontbriand*, Ms. Harbec's neurological conditions relate to a highly complex segment of medical science, neurology. *Pontbriand*, 2009 WL 2477608, at *1.

Unlike the clear warning label suitable for a lay jury in *Largess*, Ms. Harbec has not proven that her doctors failed to follow clear consumer instructions relating to any product used on her. *Cf. Largess*, 130 Vt. at 274, 291 A.2d at 400.  If surgeries on finger lacerations and tongue lesions do not satisfy the exception, then the proper diagnosis and treatment of Ms. Harbec's neurological conditions cannot satisfy it either.  Thus, Ms. Harbec needs an expert to establish what risks and treatment alternatives existed at each of her interactions with the Hospital personnel mentioned in the Amended Complaint.  Similarly, Ms. Harbec would need an expert to prove that the conditions she complains of resulted from any of the treatments or procedures she underwent at the Hospital.  *See Wissell v. Fletcher Allen Health Care, Inc.*, No. S023213, 2014 WL 9866736, at *5 n.4 (Vt. Super. Ct. May 22, 2014) ("injury" causation is a required element of claims under § 1909).

### 2.    Plaintiffs Cannot Produce an Expert

Plaintiffs have not provided an expert in this case by the stipulated expert witness disclosure deadline.  To the extent that Plaintiffs have attempted to provide an expert, the Hospital has provided an uncontested statement that Dr. Haq would not accept the role of expert witness if were offered to him.  (Doc. 76-6.)  Plaintiffs' other potential expert witness, Dr. Saunders, has stated that "any representation that [he] opined on the medial care provided to [Ms. Harbec] . . . is not accurate." (Doc. 12-2 ¶ 7.)  Thus, even if Plaintiffs had adequately contacted these two potential experts, they would not have been able to retain them.

Plaintiffs cannot provide an expert because the stipulated expert witness disclosure deadline passed on April 1, 2021.  Because Plaintiffs represent themselves, the court considers

9

whether there might be a basis to extend that deadline.  The scheduling order can be modified for "good cause."  Fed. R. Civ. P. 16(b)(4); *see also* Local Rule 26(a)(7) (extensions for "good cause").  The primary consideration in assessing good cause is the diligence of the moving party. *Kassner v. 2nd Avenue Delicatessen, Inc.*, 496 F.3d 229, 244 (2d Cir. 2007).  Courts also consider a variety of other factors: (1) imminence of trial; (2) whether the request is opposed and prejudice to non-moving party; (3) when the moving party learned of the issue that is the subject of discovery; (4) likelihood that discovery will lead to relevant evidence; (5) how the discovery might affect rulings on pending motions; (6) the length of the discovery period; and (7) whether the adverse party was responsive to discovery requests. *See* 3 *Moore's Federal Practice – Civil* § 16.14[1][a] (3d ed.).

Here, Plaintiffs' previous attempts at retaining an expert were unsuccessful and the record lacks evidence of diligence.  As noted above, Ms. Harbec has suggested the names of two doctors—Dr. Haq and Dr. Saunders—but she has not contacted either of them about being an expert in the case.  And evidence from both of those physicians indicates that both would decline to serve as experts in Plaintiffs' case.  As for the remaining factors, the court finds no evidence in the record that might support good cause for modification of the scheduling order.  Thus, the court will not grant leave to amend the discovery schedule.  Since Plaintiffs have not retained an expert witness and the expert disclosure deadline has passed, the Hospital is entitled to summary judgment on the informed-consent claim.

### C.     Loss of Consortium[5]

The court previously concluded that Ms. Harbec's husband, plaintiff Marcel Leo Harbec,

seeks to bring a loss-of-consortium claim. (*See* Doc. 61 at 15.)  But a loss-of-consortium claim

is a derivative action that depends upon the success of an underlying tort claim.  *See Derosia v.*

*Book Press, Inc.*, 148 Vt. 217, 220, 531 A.2d 905, 907 (1987).  Because Ms. Harbec's informed-

consent claim against the Hospital fails, Mr. Harbec's derivative claim against the Hospital also

fails.

## III.    Plaintiffs' Motion to Amend (Doc. 78)

### A.     Rule 15 Standard

When considering a motion to amend, the court will freely grant leave to amend

pleadings "when justice so requires." Fed. R. Civ. P. 15(a)(2).  However, leave to amend may be

denied for good cause.  Examples include undue delay, undue prejudice to the opposing party, or

futile amendments. *Foman v. Davis*, 371 U.S. 178, 182 (1962).  A proposed amendment may be

futile if it fails to state a claim for which relief can be granted. *Krys v. Pigott*, 749 F.3d 117, 134

(2d Cir. 2014).  The adequacy of a proposed amended complaint to state a claim is to be judged

by the same standards as those governing the adequacy of a filed pleading. *Anderson News,*

*L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012).  That is, the court must accept all

allegations in the proposed pleading as true and draw all reasonable inferences in the light most

favorable to the plaintiff. *Id.*

---

[5] Although the Hospital does not address any loss-of-consortium claim in its motion, the court discusses that claim briefly here for completeness.

### B.    Local Rule 15(a)

Although the Hospital has not raised this procedural issue, the court notes that Plaintiffs

have not filed a redlined version of the proposed amendment as required by Local Rule 15(a).

Failure to comply with that local rule—even for self-represented litigants—can be a basis to

deny a request for leave to amend. *See Kane v. Bailey*, No. 2:17-cv-157-cr-jmc, 2017 WL

7037684, at *3 (D. Vt. Oct. 10, 2017), *report and recommendation adopted*, 2018 WL 527968

(D. Vt. Jan. 22, 2018).  However, the court also notes that Plaintiffs' motion fails for the

substantive reasons discussed below.

### C.    Futility

Plaintiffs' arguments in favor of the motion to amend center around new proposed factual

allegations appearing in Ms. Harbec's affidavit dated May 14, 2021.  (Doc. 78-1.)  Plaintiffs seek

to bring additional informed consent claims arising from medical records and documents

produced in discovery on April 22, 2021.  (Doc. 78 at 1.)  Plaintiffs do not seek to add any new

parties or any claims arising under new legal theories.  All of Plaintiffs' proposed informed-

consent claims arise out of the same transaction or occurrence which gave rise to the initial

litigation.

The Hospital argues that amendment would be futile, cause undue delay, and be

prejudicial.  (Doc. 79.)  The Hospital asserts that the motion is futile because Plaintiff does not

have an expert.  (*Id.* at 2.)  The Hospital then notes that the case has been pending for over two

years and that Plaintiffs received instruction to plead informed-consent claims more than one

year ago.  (*Id.* at 5.)  Finally, the Hospital argues that since the expert disclosure deadline was

April 1, 2021, and that Plaintiffs have disclosed no experts, it would prejudice the Hospital to

allow Plaintiffs to amend their complaint again.  (*Id.*)

12

As discussed above, the law requires expert witness testimony to support medical malpractice claims founded solely on informed consent. 12 V.S.A. § 1909(e). Plaintiffs' motion does not include any argument that a jury would be able to understand the medical issues relevant to the case without expert witness testimony. (Doc. 78.) Nor is it possible to infer or construe a favorable result for the Plaintiffs on the face of the available documents and evidence. (*See* Doc. 78; Doc. 78 Ex. 1.) The proposed amended complaint would not withstand a motion to dismiss. Thus, the motion is futile. This conclusion makes it unnecessary to reach the Hospital's additional arguments regarding undue delay and prejudice.

## **Conclusion**

North Country Hospital & Health Practices' Motion for Summary Judgment (Doc. 76) is

GRANTED.  Plaintiffs' motion to amend (Doc. 78) is DENIED.

Dated at Burlington, in the District of Vermont, this 10th day of August, 2021.

Geoffrey W. Crawford, Chief Judge
United States District Court